IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

MYSON J. HOUCK,                                      Civil No. 1:11-6041-CL

    Plaintiff,                                   REPORT AND RECOMMENDATION

       v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

    Defendant.


CLARKE, Magistrate Judge.

    Plaintiff Myson J. Houck brings this action pursuant to section 205(g) of the Social

Security Act, as amended (Act), 42 U.S.C. §§ 405(g), to obtain judicial review of the

Commissioner's final decision denying plaintiff's applications for supplemental security income

benefits.  For the reasons explained, the decision of the Commissioner should be affirmed.

## BACKGROUND

    Plaintiff applied for benefits alleging disability commencing November 1, 2005.  His

application was denied.  Plaintiff requested a hearing, which was held before an Administrative

Law Judge (ALJ) on August 27, 2009.  Plaintiff, represented by counsel, appeared and testified

as did a vocational expert and a lay witness.  At the hearing, plaintiff amended the onset date of disability to the protective filing date of November 14, 2006.  On September 10, 2009, the ALJ rendered an adverse decision.  The Appeals Council granted plaintiff's request for review and issued an unfavorable decision on December 14, 2010, making the Appeals Council's decision the final decision of the Commissioner.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (and authorities cited).

At the time of plaintiff's hearing and the ALJ's decision, plaintiff was twenty-one years old.  Plaintiff stopped attending school in the eleventh grade, but has obtained a GED.  Plaintiff has no past relevant work experience.  Plaintiff alleged disability based upon schizophrenia and neck and back pain in his application, but stated at the administrative hearing he was not claiming any physical restrictions.  The relevant medical evidence is discussed below.

## STANDARDS

This Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court considers the record as a whole, and weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Questions of credibility and resolution of conflicts

2 - REPORT AND RECOMMENDATION

in the testimony are functions solely of the Commissioner, <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence, <u>Ceguerra v. Sec'y of Health & Human Servs.</u>, 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." <u>Flake v. Gardner</u>, 399 F.2d 532, 540 (9th Cir. 1968); <u>see also</u> <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the Court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. <u>Howard v. Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the

3 - REPORT AND RECOMMENDATION

present case, the Appeals Council agreed with the ALJ that plaintiff had not engaged in substantial gainful activity since November 14, 2006. (Tr. 5, 6, 17.)

In step two, the Commissioner determines whether the claimant has "a medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520©), 416.920©). In the instant case, the Appeals Council agreed with the ALJ's finding that plaintiff's paranoid schizophrenia, cannabis dependence, and alcohol dependence constitute severe impairments. (Tr. 5, 6, 18, 19-20.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the Appeals Council agreed with the ALJ's findings with regard to the listings. The ALJ first found that plaintiff's impairments, including the substance use disorders, meet listings 12.02, 12.03, and 12.09 of the listed impairments. (Tr. 5, 6, 18-19.) The ALJ then found that, if plaintiff stopped the substance use, he would continue to have a severe impairment or combination of impairments, but he would not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (Tr. 5, 6, 19-21.)

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work." If the claimant is so able, then the Commissioner finds the claimant "not

4 - REPORT AND RECOMMENDATION

disabled." Otherwise, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The Commissioner must first identify the claimant's residual functional capacity (RFC), which

should reflect the individual's maximum remaining ability to perform sustained work activities in

an ordinary work setting for eight hours a day, five days a week. Social Security Ruling (SSR)

96-8p. The RFC is based on all relevant evidence in the case record, including the treating

physician's medical opinions about what an individual can still do despite impairments. Id. In

this case, the Appeals Council agreed with the ALJ that, if plaintiff stopped the substance use, he

retains the RFC to perform a full range of work at all exertional levels, but that he has

nonexertional limitations: plaintiff is able to carry-out and remember simple one to two step

commands; he has moderate restrictions in dealing with supervisors; and he is able to deal with

the public occasionally, up to 1/3 of the time.[1] (Tr. 5, 6, 21-28.) The Appeals Council agreed

with the ALJ that plaintiff has no past relevant work. (Tr. 5,6, 28.) Accordingly, the inquiry

moved to step five.

In step five, the burden is on the Commissioner to establish that the claimant is capable of

performing other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20

C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner fails to meet this burden, then the

claimant is deemed disabled. Here, the Appeals Council agreed with the ALJ that, if plaintiff

stopped the substance use, and considering plaintiff's age, education, work experience, and

residual functional capacity, there were a significant number of jobs existing in the national

economy that plaintiff can perform. (Tr. 5-6, 6-7, 29-30.) The Appeals Council agreed with

---

[1]    The ALJ stated in his decision, "Moderate is defined as more than mild, but less than marked;
however the individual is still able to function satisfactorily." (Tr. 21.)

5 - REPORT AND RECOMMENDATION

the ALJ's finding that the substance use disorders are contributing factors material to the determination of disability, and agreed with and adopted the ALJ's finding and conclusion that plaintiff has not been disabled at any time through the date of the decision. (Tr. 5, 6-7, 30.)

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is not supported by substantial evidence and contains errors of law. Plaintiff contends that the ALJ erred by: (1) failing to develop the record with regard to his intelligence and cognitive functioning; (2) failing to properly evaluate the opinions of medical providers; and (3) failing to meet the step five burden of proving he retained the ability to perform other work in the national economy.

### Development of the Record

Plaintiff contends the ALJ erred by failing to fully develop the record as to his intelligence. He contends the ALJ failed to mention Dr. Kirkendall's comments regarding plaintiff's low intelligence and he concludes that, without this evidence, it is impossible to state whether drug or alcohol use is materially contributing to his disability.

Prior to making a decision whether a claimant is disabled, the ALJ is required to develop a claimant's medical history for at least the twelve months preceding the claim. 20 C.F.R. §§ 404.1512(d), 416.912(d). In the Ninth Circuit, the ALJ has an "independent '"duty to fully and fairly develop the record and to assure that the claimant's interests are considered."'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). The duty to further develop the record is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150);

6 - REPORT AND RECOMMENDATION

<u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002) (requirement for additional information "is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability."). The ALJ's duty is heightened where the claimant may be mentally ill. <u>Tonapetyan</u>, 242 F.3d at 1150. Such a duty exists even where the claimant is represented by counsel. <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983).

Plaintiff was referred to Allan R. Kirkendall, Ph.D., who conducted an examination on May 15, 2007. He states at the outset of his report that he was to provide a clinical picture of plaintiff's day-to-day functioning, particularly as to any information regarding schizophrenia.

Relevant to the issue raised by plaintiff, plaintiff reported to Dr. Kirkendall he is a high school graduate and was an average student in high school. Dr. Kirkendall noted paperwork sent with plaintiff indicates there is a question regarding his overall intelligence. He further noted plaintiff's presentation in the interview suggested plaintiff had a more difficult time in school than he was willing to admit.

They discussed plaintiff's October 2006 hospitalization when he was diagnosed with undifferentiated schizophrenia.

Plaintiff denied ever using illicit drugs, although he conceded it was probably true that he was under the influence of marijuana when he was hospitalized in 2006. Plaintiff couldn't remember the last time he smoked marijuana and/or didn't consider marijuana to be a problem. He denied all categories of illicit drug usage. Plaintiff did not believe alcohol has ever been a problem and he hadn't drunk alcohol in a long time. Dr. Kirkendall stated in his report:

> Unfortunately, Mr. Houck's self-report with regards to alcohol and drug usage is simply not believable. Marijuana clearly was a precipitating factor in his hospitalization and according to records provided marijuana is a drug that is very

7 - REPORT AND RECOMMENDATION

> psychologically destabilizing for this individual. The most likely scenario is that
> Mr. Houck continues to both use and abuse alcohol and marijuana on at least an
> episodic basis but [] because he does this in his own home he has not to date come
> again to the attention of the authorities. Further, paperwork sent with Mr. Houck
> suggests that when he is clean and sober he reports a total absence of psychotic
> symptoms. Thus, Mr. Houck's suspected drug and alcohol abuse is a critical issue
> with regards to his ongoing psychological problems.

(Tr. 294-95.)

On mental status examination, Dr. Kirkendall stated plaintiff was not cooperative and his

answers tended to be brief and evasive. He was not able to engage in a normal conversation. His

vocabulary suggested low-average intelligence at best.

> Paperwork with Mr. Houck suggested the possibility of mental retardation and
> certainly based on his behavior in today's interview it is quite possible that he is
> functioning in the borderline retarded range of intelligence. Mr. Houck suspected
> [sic] low intelligence will probably be a barrier to his being successfully
> employed. Thus, in fairness to this applicant, IQ testing might be considered.

(Tr. 295.)

Dr. Kirkendall's diagnoses were: Axis 1 Cannabis-Induced Psychotic Disorder with

delusions, Cannabis Abuse episodic, and R/O Schizophrenia paranoid type; and Axis 2

Personality Disorder NOS with anti-social and dependent features, and R/O Borderline

Intellectual Functioning. (Tr. 293-98.)

The ALJ discussed Dr. Kirkendall's report several times in his decision. It is true, as

plaintiff asserts, that the ALJ did not mention Dr. Kirkendall's comments suggestive of

plaintiff's low intelligence, but he did include all Dr. Kirkendall's diagnoses, including his

diagnosis of R/O borderline intellectual functioning. (Tr. 25.) On this record, the court cannot

find that the ALJ erred by not developing the record with regard to plaintiff's intellectual

functioning. It is clear from the authorities that the ALJ's duty to develop the record relates to

8 - REPORT AND RECOMMENDATION

evidence of a claimant's claimed disabling impairment or impairments. Plaintiff asserts in his

reply brief that, contrary to defendant's contention that plaintiff never raised a cognitive

impairment as a potentially disabling condition until his opening brief in this court, he raised the

issue in his initial application. The record cited by plaintiff is a disability report completed in

March 2007 which shows that plaintiff stated "Schizophrenia, back and neck pain" were the

illnesses, injuries, or conditions which limited his ability to work and, in answer to the question

how these limited his ability to work he answered: "I have pauses and get very frogetful [sic], I

cant [sic] remember where I leave things, am very unorganized." (Tr. 160.) He also cites

hospital records of November 2006 where his discharge diagnoses were Axis I schizoaffective

disorder, bipolar type, and marijuana dependence; and Axis II likely borderline cognitive

function. (Tr. 213.) However, plaintiff has not claimed low intellectual functioning as a

disability in the paperwork and, at the administrative hearing, after conceding there were no

physical problems claimed, plaintiff's counsel told the ALJ it was the "C-2 criteria" at issue.[2]

(Tr. 46.) See 20 C.F.R. § 416.1444; Meanel v. Apfel, 172 F.3d 111, 1115 (9th Cir. 1999) ("We

now hold that, at least when claimants are represented by counsel, they must raise all issues and

evidence at their administrative hearings in order to preserve them on appeal."). This same

reasoning applies to plaintiff's contention that the ALJ could not determine whether drug or

alcohol use is materially contributing to plaintiff's disability. The ALJ analyzed the record in fair

detail. He recounted the evidence in his decision, including discussing Dr. Kirkendall's opinion.

---

[2]    According to the Psychiatric Review Technique form, the C-2 criteria  means
"Schizophrenic, Paranoid and Other Psychotic Disorders." (See Tr. 299).

9 - REPORT AND RECOMMENDATION

The record was not inadequate or ambiguous and allowed him to make his determination. The ALJ did not err in failing to develop the record in this regard.


## "Other" Medical Source Opinions

### Opinion of Brenda Evans BA QMHA

Plaintiff first contends the ALJ erred in his consideration of his treating therapist, Brenda Evans.

A therapist is considered an "other" medical source. 20 C.F.R. §§ 404.1513(d); 416.913(d). As such, a therapist's opinion is not entitled to the weight accorded an "acceptable medical source" under the Commissioner's regulations, see 20 C.F.R. § 404.1513(a); 416.913(a). Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996). However, evidence from "other sources" may be used to show the severity of the individual's impairments and how the impairment or impairments affects the ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p. The ALJ has a duty to consider these medical professionals' opinions and the opinions which may be discounted only if based on reasons germane to the source. 20 C.F.R. §§ 404.1513(d): 416.913(d); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Purvis v. Comm'r of Soc. Sec. Admin., 57 F. Supp.2d 1088, 1092 (D. Or. 1999).

The record includes progress notes signed by Brenda Evans BA QMHA of Douglas County Mental Health (DCMH) on two dates in November and December 2008. Each of the progress notes includes at the beginning "Diagnosis: Schizophrenia, Chronic Paranoid Type; Cocaine Dependence; Alcohol Dependence; Cannabis Dependence." Ms. Evans indicated she

10 - REPORT AND RECOMMENDATION

met with plaintiff with the objective of meeting his treatment goal of getting a job by observing,

listening, and providing skills training and case management.  (Tr. 380-82.)  Ms. Evans testified

at the August 2009 administrative hearing.  She is a case manager, mental health specialist.  The

following colloquy took place between plaintiff's counsel and Ms. Evans:

> Q      Why should Judge Mariani think that the problem here is mental
>
> health and not pot, . . . that's a pretty direct question. . . . There's pot all over the
>
> record here, and . . . there's also the other problems that, does your agency think
>
> that he has schizophrenia and that that's the main problem or does your agency
>
> think that he's got the pot, and that's the main problem, or what ?
>
> A      Our agency has diagnosed him with a schizophrenia paranoid type.
>
> Q      But there's also a diagnoses of cannabis abuse.
>
> A      True, and that, that can go for history of somebody, it doesn't mean
>
> they are currently using.

(Tr. 47-48.)  She testified she'd been to his house and had been there on unexpected visits:

> Q      What are your observations when you go on unexpected visits ?
>
> A      Myson is usually there.  There's been a time or two that he wasn't
>
> there, and then his parents had said that he was working at a neighbor's doing
>
> maybe chopping wood or, or something like that, he was not at home.

(Tr. 48.)  Ms. Evans testified she did not think plaintiff could do a full-time job even he didn't

have to deal with other people if wasn't smoking pot because he would still have difficulty

concentrating, focusing on one job; and if his supervisor came by to check on him he might be

paranoid and think he's being harassed.  She testified his schizophrenia has caused more than a

11 - REPORT AND RECOMMENDATION

minimal limitation of ability to do any basic work activity. Even if plaintiff were in a low stress

work environment and the work was simple, she believed his symptoms would increase and he

would not be able to handle it for eight hours; he would have absences. She stated plaintiff's

medication helps him and he says he doesn't have side effects, but he continues to hear voices.

(Tr. 48-52.)

The ALJ considered Ms. Evans' testimony in his decision. He found that the records do

not reflect a diagnosis of cannabis abuse by history, but clearly state cannabis dependence; and

plaintiff admitted he uses marijuana two or more times a week. The ALJ found Ms. Evans

assumption of no current cannabis use by plaintiff was unfounded and was inconsistent with the

objective record as a whole. He gave no weight to Ms. Evans' opinion. Plaintiff argues this

reason is insufficient because Ms. Evans was merely reporting her own experience with plaintiff

and the diagnosis did not mean he was currently using the drug. However, plaintiff's contention

is contrary to Ms. Evans response to the question posed to her at the hearing about the agency

diagnosis of cannabis abuse, as set out supra. She testified particularly that the diagnosis "can go

for history of somebody, it doesn't mean they are currently using." (Tr. 48.) However, the

diagnosis in the agency records, including Ms. Evans own progress notes, is cannabis

dependence and not history of cannabis dependence. Notably, in March 2009, during the time

Ms. Evans was apparently seeing plaintiff for treatment, Jerome S. Webber, MS, a case manager

at DCMH, prepared a "Clinical Formulation Summary." He states in the summary that, although

plaintiff reported not using alcohol or cannabis during the previous two months, "it seems

difficult to rely on the accuracy of his report." Mr. Webber stated plaintiff was in the

"precontemplation stage of change" in regard to alcohol and cannabis use and the environment

12 - REPORT AND RECOMMENDATION

did not seem to support recovery; plaintiff did not want to address use of cannabis or alcohol in

treatment planning. (Tr. 395.) The ALJ recounted DCMH records in his decision. Further, in

addition to DCMH records, plaintiff testified at the administrative hearing he smoked

pot–"probably a joint or so every week" (Tr. 40), "once a week or twice a week" (Tr. 45). The

ALJ's stated reasons that Ms. Evans' statement in this regard was unfounded and inconsistent

with the objective record are germane to her and are supported by substantial evidence in the

record.

      The ALJ also noted that Ms. Evans had been to plaintiff's house. The ALJ stated, "in fact

her son is usually at the claimant's house when she makes house visits." (Tr. 28.) He found Ms.

Evans may be biased toward plaintiff because her son is friends with him. This finding appears

to be based upon a misunderstanding of Ms. Evans' testimony. As set out above, Ms. Evans

referred to plaintiff by his first name–Myson–when testifying about her home visits, stating,

"Myson is usually there. There's been a time or two that he wasn't there, and then his parents

had said that he was working at a neighbor's doing maybe chopping wood or, or something like

that, he was not at home." (Tr. 48.) Ms. Evans was clearly referring to plaintiff in this

testimony.[3] This reason given by the ALJ is not supported by Ms. Evans' testimony. In relation

to this testimony, the ALJ set out Ms. Evans' testimony that plaintiff's limitations in

concentrating and focusing prevented him from working, and she felt plaintiff could not work a

full time schedule. The ALJ found that her testimony was inconsistent with the objective record.

---

      [3]   In arguing that this reason is not supported, plaintiff relies on Ms. Evans' clarification of her testimony as stated in a letter dated December 7, 2010, from her to plaintiff's counsel. (Tr. 409.) This clarification came more than one year after the ALJ rendered his decision in September 2009. (Tr. 12, 30.)

13 - REPORT AND RECOMMENDATION

It appears plaintiff is referring to this reasoning of the ALJ's when he asserts that Ms. Evans'

testimony regarding his limitations is consistent with Dr. Kirkendall's report.[4] However, while

Dr. Kirkendall may have found limitations in plaintiff's concentration, the ALJ is not referring to

any inconsistency in the evidence regarding plaintiff's limitations but to Ms. Evans' testimony

that plaintiff cannot work because of these limitations, compared to the evidence of record that,

despite limitations in plaintiff's concentration, he is able to carry out and remember simple one to

two step commands and can work, see discussion infra. This reason given by the ALJ for

rejecting Ms. Evans' testimony is germane to her and supported by substantial evidence in the

record.

Last, the ALJ noted that, after review of the record as a whole, Ms. Evans is mentioned

once as an "intervention" person in March 2009, see Tr. 397, whereas Mr. Webber and Mr.

Rogers are established in the record as plaintiff's case managers. The ALJ found Ms. Evans'

testimony was not wholly credible when compared to the case managers who have treated

plaintiff for over one year. He found her testimony was inconsistent with the record. Plaintiff

argues this is not a basis for rejecting Ms. Evans' testimony and is, instead, a basis for further

development of the record. The court has reviewed DCMH records which show a longer

counseling relationship with other case managers, as recounted by the ALJ in his decision. In

weighing medical opinions, regardless of the source, the ALJ may consider the treatment

relationship including factors such as the length of the treating relationship and frequency of

examinations; the nature and extent of the relationship; and whether the opinion is supported by

---

[4]    Plaintiff also contends Ms. Evans' testimony is consistent with the evaluation by Julie Kovac.
Ms. Kovac's evaluation is discussed infra.

14 - REPORT AND RECOMMENDATION

relevant evidence. 20 C.F.R. §§ 404.1527(d); 416.913(d); SSR 06-03p. The court finds this reason given by the ALJ for rejecting Ms. Evans' opinion germane to her and supported by substantial evidence in the record.

While the ALJ gave one reason for discounting Ms. Evans' testimony which is not supported by the record, he gave several other reasons which are germane to Ms. Evans and supported by substantial evidence in the record. No error occurred in the ALJ's consideration of Ms. Evans' testimony.

**Opinion of Julie Kovac LSCW**

Plaintiff also contends the ALJ erred by not mentioning the report and opinion by Julie Kovac at DCMH. Included in the record is a mental health assessment by Julie Kovac LSCW. The assessment was done on October 26, 2009, and signed on November 11, 2009. (Tr. 398-408.) It was sent to plaintiff's counsel with a letter dated December 7, 2010, by Brenda Evans at DCMH. It appears from the document that the assessment was sent to the agency by plaintiff's counsel on December 16, 2010. (Tr. 409.) Ms. Kovac's assessment was completed after the ALJ's decision which was rendered on September 10, 2009. (Tr. 12, 30.) At the time it was apparently sent to the agency, on December 16, 2010, by plaintiff's counsel, the Appeals Council had granted review based upon the record considered by the ALJ and hearing testimony, and had rendered its unfavorable decision on December 14, 2010, agreeing and adopting the ALJ's decision. (Tr. 1-7, 135-38.) Accordingly, it could not be error for the ALJ or Appeals Council to have failed to consider Ms. Kovac's assessment. The case cited by plaintiff in his reply brief, Taylor v. Comm'r. Soc. Sec. Admin., 659 F.3d 1228 (9th Cir. 2011), is inapposite. In that case,

15 - REPORT AND RECOMMENDATION

plaintiff had submitted evidence to the Appeals Council with his request for review of the ALJ's decision. No error occurred in this case in this regard.

## Step Five "Other Work"

Plaintiff contends that, although the ALJ found if he stopped using illegal substances, he would still have moderate limitations in concentration, persistence, or pace, but this limitation was not included in the hypothetical posed to the vocational expert (VE). He contends that the limitation stated–limiting him to jobs with only simple one-two step commands–did not address his deficiencies in concentration, persistence, or pace, citing an unpublished decision of this court, Mudgett v. Astrue, No. 07-CV-485-CL, Report and Recommendation (D. Or. Apr. 11, 2008, adopted by order (May 1, 2008).

Following this court's decision in Mudgett, the Ninth Circuit in Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008), determined that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical record." (Citing Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001); Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001)). In Stubbs-Danielson, the court held that the hypothetical and RFC including the restriction to "simple tasks" properly incorporated the limitations identified in the medical record "including those related to pace and the other mental limitations regarding attention, concentration, and adaption [sic]." 539 F.3d at 1174.

Here, examining psychologist, Allan R. Kirkendall, PH.D., concluded in May 2007 following examination, that plaintiff's behavior suggested he would have difficulty consistently

16 - REPORT AND RECOMMENDATION

understanding and remembering anything beyond very simple instructions, and would have difficulty sustaining concentration over extended periods of time. He found plaintiff is not a persistent individual. (Tr. 296, 297, 293-97.) Consulting agency psychologist, Paul Rethinger, Ph.D., reviewed the record in May 2007 including Dr. Kirkendall's report. (See Tr. 301.) Dr. Rethinger found plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 309.) In a Mental Residual Functional Capacity Assessment completed by him the same date, Dr. Rethinger found in relevant part that plaintiff was not significantly limited in his abilities to understand and remember, and to carry out, very short and simple instructions; and that he was moderately limited in the abilities to understand and remember, and carry out, detailed instructions; and in the ability to maintain attention and concentration for extended periods. (Tr. 313-14.) In his narrative, Dr. Rethinger stated plaintiff had the ability to remember and carry out simple one to two step commands when compliant with meds and when avoiding cannabis and other drugs, evidenced by his ability to play Xbox, use the computer, prepare meals, and drive himself around, although he has a more difficult time carrying out more detailed commands. He stated plaintiff would have difficulty sustaining concentration over extended periods of time, "particularly when abusing MJ." He found, therefore, that plaintiff was limited to simple one to two step commands in the workplace. (Tr. 315.) Plaintiff does not challenge the medical evidence in this regard.

In any event, contrary to plaintiff's contention, the ALJ included in his hypothetical to the VE the moderate limitation in concentration, persistence and pace: "Let's assume that the claimant would have moderate restrictions in concentration, persistence and pace. Moderate is defined as more than mild, less than marked, but the individual is still able to function

17 - REPORT AND RECOMMENDATION

satisfactorily." (Tr. 52-53.)  The ALJ went on to include in the hypothetical in relevant part that

the claimant "would be able to carry out and remember simple one, two-step commands."  (Tr.

53.)  In response, the VE identified certain jobs existing in the national economy.

      On this record, the ALJ's hypothetical included moderate restrictions in concentration,

persistence, and pace identified in the medical record.  See Bickford v. Astrue, Civil No. 09-833-

KI, 2010 WL 4220531, at *11-*12 (D. Or. Oct. 19, 2010); Cox v. Astrue, Civil No. 09-1415-CL,

2011 WL 6122954, at *9 (D. Or. Oct. 26, 2011), adopted by order, 2011 WL 6123467 (D. Or.

Dec. 9, 2011); Pa Dee Thao v. Astrue, No. 1:10-CV-0244-SKO, 2011 WL 2516151, at *12 (E.D.

Cal. June 21, 2011).  The hypothetical and the ALJ's step five finding are supported by

substantial evidence and free from error.


# RECOMMENDATION

      Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is

recommended that the decision of the Commissioner be affirmed.

      *This recommendation is not an order that is immediately appealable to the Ninth Circuit*

*Court of Appeals*.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate

Procedure, should not be filed until entry of the district court's judgment or appealable order.

      The Report and Recommendation will be referred to a district judge.  *Objections to this*

*Report and Recommendation, if any, are due by February 27, 2012.  If objections are filed, any*

*response to the objections are due by March 15, 2012,* see *Federal Rules of Civil Procedure 72*

*and 6.*

18 - REPORT AND RECOMMENDATION

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___/___ day of February 2012.

MARK D. CLARKE
United States Magistrate Judge

19 - REPORT AND RECOMMENDATION